UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

NXIVM CORPORATION, EXECUTIVE SUCCESS
PROGRAMS, INC., ALEX BETANCOUT, BARBARA
BOUCHEY, CLARE W. BRONFMAN, EDGAR BOONE,
ELLEN GIBSON, SARA R. BRONFMAN, PAMELA
CAFRITZ, SUZANNE KEMP, WAYNE BATES, LUIS
MONTES, and FRANCA DICRENSENZO,

*Plaintiffs*,

– against –

JOSEPH J. O'HARA, DOUGLAS RUTNIK, and DENISE F.
POLIT,

*Defendants.*

-------------------------------------------------------------------------X

**ORIGINAL**

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

Index No.          AUG 1 8 2005

**COMPLAINT**
LAWRENCE K. BAERMAN, CLERK

**Jury Trial Demanded** ALBANY

**05 -CV- 1045**
**GLS / RFT**

Plaintiffs NXIVM Corporation, Executive Success Programs, Inc., Alex Betancout, Barbara

Bouchey, Clare W. Bronfman, Edgar Boone, Ellen Gibson, Sara R. Bronfman, Pamela Cafritz,

Suzanne Kemp, Wayne Bates, Luis Montes, Peralta, Franca DiCrensenzo and Sue White, by their

attorneys, Judd Burstein, P.C., as and for their complaint, allege as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over the instant matter pursuant to 18 U.S.C. § 1964, and

principles of pendent jurisdiction.

2.       Venue in this Court is appropriate pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. §

1391(b)(1).

## THE PARTIES

3.       Plaintiff NXIVM Corporation is a corporation formed and existing under the laws of

the State of New York, with a  principal place of business located at 455 New Karner Road, Albany,

N.Y. 12205.

4.      Plaintiff Executive Success Programs, Inc. is a corporation formed and existing under the laws of the State of Nevada and authorized to do business in the State of New York, with a principal place of business located at 455 New Karner Road, Albany, N.Y. 12205. Executive Success Programs, Inc. is affiliated with NXIVM. (NXIVM and Executive Success Programs, Inc. are hereinafter collectively referred to as "NXIVM.")

5.      Plaintiff Clare W. Bronfman ("C. Bronfman") is a citizen of the State of New York.

6.      Plaintiff Sara R. Bronfman ("S. Bronfman") is a citizen of the State of New York.

7.      Plaintiff Alex Betancout is a citizen of Mexico.

8.      Plaintiff Barbara Bouchey is a citizen of the State of New York.

9.      Plaintiff Edgar Boone is a citizen of Mexico.

10.     Plaintiff Ellen Gibson is a citizen of the State of New York.

11.     Plaintiff Pamela Cafritz is a citizen of the State of New York.

12.     Plaintiff Suzanne Kemp is a citizen of the State of New York.

13.     Plaintiff Wayne Bates is a citizen of the State of New York.

14.     Plaintiff Luis Montes is a citizen of Mexico.

15.     Plaintiff Franca DiCrensenzo is a citizen of the State of New York.

16.     For the purposes of this Complaint Plaintiffs Alex Betancout, Barbara Bouchey, Edgar Boone, Ellen Gibson, Pamela Cafritz, Suzanne Kemp, Wayne Bates, Luis Montes, Franca Dicrensenzo and Sara R. Bronfman shall be collectively hereinafter referred to as the "Donor Plaintiffs."

17.     Defendant Joseph A. O'Hara ("O'Hara") is an individual who, upon information and belief, is a citizen of the State of New York and, in any event, resides in the State of New York.

2

Although licensed to practice law only in Washington, D.C., he is not licensed to practice law in New York State. Nonetheless, he has been unlawfully practicing law out of his offices in Albany, New York.

18.     Defendant Denise F. Polit ("Polit") is an individual who, upon information and belief, is a citizen of the State of New York. Upon information and belief, Polit is the ex-wife of O'Hara.

19.     Upon information and belief, Defendant Douglas Rutnik ("Rutnik") is an attorney licensed to practice law in New York State, of which he is a citizen.

### FACTUAL ALLEGATIONS
### COMMON TO ALL CAUSES OF ACTION

**A.     THE FIRST FRAUDULENT SCHEME: O'HARA'S ILLEGAL AND FRAUDULENT PROVIDING OF LEGAL SERVICES TO NXIVM AND OTHERS IN NEW YORK**

20.     NXIVM's principal business is, *inter alia*, conducting training programs primarily for managers, chief executives and other business professionals ("Executive Training"). Although NXIVM conducts Executive Training seminars internationally, a substantial portion of those seminars are held in the State of New York. Indeed, NXIVM's principal office is located in Albany, N.Y.

21.     Due to NXIVM's presence and extensive business in New York, it needed an attorney authorized to practice in New York State to handle its legal concerns and interests in this State.

22.     In or about October 2003, NXIVM retained O'Hara as its attorney to handle these legal concerns and interests. NXIVM hired O'Hara as its attorney after he represented to NXIVM that he was authorized to practice law in New York, and thereby advise NXIVM with respect to a host of matters arising under New York State law. O'Hara made this representation knowing that it was false, and with the intent to deceive NXIVM and induce NXIVM to retain him. NXIVM

3

reasonably relied on this false representation to its detriment. NXIVM also hired O'Hara to represent C. Bronfman and S. Bronfman (collectively referred to herein as the "Bronfmans"). NXIVM paid O'Hara hundreds of thousands of dollars for the legal services he had falsely claimed that he was authorized to provide.

23.     Thereafter, O'Hara performed legal services for NXIVM in New York. However, as NXIVM subsequently discovered, O'Hara was not licensed to practice law in New York and was providing legal services to NXIVM in direct violation of New York Judiciary Law §§ 478 and 485.

**B.     THE SECOND FRAUDULENT SCHEME: O'HARA'S SECURING OF FRAUDULENT LOANS FROM THE BRONFMANS**

24.     In October of 2004, at a time when he was acting as their attorney (albeit not authorized to do so under New York law), O'Hara solicited and consummated separate $1,000,000 loans from each of C. Bronfman and S. Bronfman (collectively the "$2M Loan"). The $2M Loan clearly violated New York Disciplinary Rule 5-104, in that:

        a.     The transaction itself, and the terms thereof, were not fair and reasonable because, *inter alia* and as detailed below, O'Hara lied to the Bronfmans about the ownership and value of the "security" for these loans;

        b.     O'Hara never advised either of the Bronfmans that they should seek the advice of independent counsel; and

        c.     O'Hara never secured the clients' full, written and informed consent to the transaction, including consent to the inherent conflict of interest in the transaction.

25.     More importantly, however, the $2M Loan was a flat out fraud.  Pursuant to two separate fraudulent Option to Purchase Real Estate Agreements ("Fraudulent Option Agreement(s)"), O'Hara provided the Bronfmans with collateral in the form of options to purchase two pieces of real estate purportedly owned by O'Hara.  The alleged purpose of the Fraudulent Option Agreements were to provide security for the $2 Million loan.  In fact, the security was illusory.  Moreover, had O'Hara met his ethical obligations and referred the Bronfmans to an independent lawyer, no such competent, independent lawyer would have ever agreed to "security" in this form.

26.     The Fraudulent Option Agreement relating to C. Bronfman's $1,000,000 loan (Exhibit A hereto) to O'Hara provided that, in return for the loan, C. Bronfman had the option to purchase real estate in New Baltimore, N.Y. from O'Hara for $1,000,000.  This transaction was entirely fraudulent for at least the following reasons:

a.      Notwithstanding his explicit written representation that he owned the property, O'Hara in fact did not and has never owned this property.  It was and is owned in the name of Properties Management and Development, Inc., with an address that is the same as O'Hara's address.  (Exhibit B hereto is the deed for the property).  Significantly, the New York Secretary of State's web site does not show the existence of any such corporation.  However, it does list a company known as "Properties Development and Management, Inc.", of which O'Hara is listed a the Chief Executive or President.  On information and belief, O'Hara is the sole or partial owner of this company.

b.      On information and belief, at the time he entered into the Fraudulent Option Agreement with C. Bronfman, the property had not even been purchased by

5

Properties Development and Management, Inc. The basis for that information and belief is that although the deed for the property is dated September 16, 2004, it was not filed in the Green County Clerk's Office until October 28, 2004. Moreover, the purchase of that property was one part of a purchase of two parcels of land from the same sellers. The deed for the purchase of the second parcel (Exhibit C hereto), by O'Hara personally and Cheryl E. Peterson, was made through a mortgage (Exhibit D hereto) that was not executed until October 27, 2004. Hence, it is apparent that both parcels, with deeds dated September 16, 2004, were not actually transferred until the date of the mortgage – i.e., after C. Bronfman had loaned her money to O'Hara.

c. O'Hara's representation that the property was worth $1,000,000, was also false, as it was purchased at the time of the loan for just $950,000.

27. The Fraudulent Option Agreement (Exhibit E hereto) relating to S. Bronfman's $1,000,000 loan to O'Hara provided that, in return for the loan, S. Bronfman had the option to purchase real estate in Saratoga Springs, N.Y. from O'Hara for $750,000. This transaction was entirely fraudulent for at least the following reasons:

a. Notwithstanding his explicit written representation that he owned the property, O'Hara in fact did not and has never owned this property. It was and is owned in the name of Jodono Associates, Inc. ("Jodono"), which is now known as Saratoga Property and Development, Inc. According to the New York Secretary of State, O'Hara is and, at all relevant times, was the

6

President or CEO of Jodono.  On information and belief, O'Hara is the sole or partial owner of Jodono.

b.    O'Hara's representation that the property was providing security in the amount of $750,000 was false in that he failed to disclose that Rutnik held a $200,000 mortgage on the property, thereby reducing the available equity.

28.    The fraudulent representations and omissions detailed above were made by O'Hara with the intent to deceive the Bronfmans and to induce them into loaning him money.  The Bronfmans reasonably relied on these fraudulent representations to their detriment, as they each transferred $1,000,000 to O'Hara.

29.    Furthermore, O'Hara used the Fraudulent Option Agreements to cheat NXIVM. Pursuant to the Fraudulent Option Agreements, O'Hara further agreed, also in exchange for the $2M Loan and as an inducement to the Bronfmans,  to provide his legal services to NXIVM at no cost for the period from July 1, 2004 through December 31, 2006.  In other words, the Fraudulent Option Agreements made NXIVM an express third-party beneficiary creditor of O'Hara with regards to the $2M Loan.

30.    Ultimately, however, O'Hara violated his own Fraudulent Option Agreements by unilaterally terminating his relationship with NXIVM in the Spring of 2005.

## C.    THE THIRD FRAUDULENT SCHEME: THE HIRING OF RUTNIK AND OTHER PROFESSIONALS

31.    In November of 2003, O'Hara recommended to NXIVM that it also hire Rutnik as an attorney for the purpose of assisting O'Hara.  On the basis of that recommendation, NXIVM paid

Rutnik a retainer of $100,000. Notwithstanding NXIVM's requests that he do so, Rutnik never, as required by New York law, consummated a written retainer agreement with NXIVM.

32.    As noted *supra*, the Saratoga New York property allegedly securing O'Hara's debt to S. Bronfman was not, contrary to O'Hara's explicit representation, personally owned by O'Hara. Rather, it was owned by a company named Jodono, which is now known as Saratoga Property and Development, Inc. Also as noted above, at the time that O'Hara recommended Rutnik to NXIVM, Rutnik held a $200,000 mortgage on Jodono's Saratoga property. At no time during the course of either representation of NXIVM, or in the period during which NXIVM was considering hiring Rutnik, did either O'Hara or Rutnik disclose this obligation to NXIVM. On information and belief, O'Hara and Rutnik failed to disclose this debtor-creditor relationship with the intent to defraud NXIVM into believing that O'Hara's recommendation of Rutnik was made in good faith, as opposed to being connected to O'Hara's efforts either to reduce or delay his debt obligation to Rutnik. Had NXIVM been informed of the financial relationship between O'Hara and Rutnik, it would not have hired Rutnik who, as it turns out, hardly performed any work and thereafter refused to return or even account for any of the $100,000 paid to him by NXIVM.

**D.    THE FOURTH SCHEME: O'HARA'S SECURING OF SECRET REFERRAL FEES**

33.    During the course of his relationship, O'Hara, as part of his agreed-upon duties for NXIVM, was obligated to identify NXIVM's need for additional professionals, and make recommendations with respect thereto. In fact, O'Hara did make such recommendations, including a strong recommendation that NXIVM hire Rutnik's paramour, Gwen Bellancourt, as a public relations specialist. Based upon those recommendations, NXIVM did hire some additional professionals, including Rutnik. NXIVM relied upon O'Hara's representations that the professionals

8

he was recommending were the best professionals for the work needed by NXIVM, and that he was recommending these professionals solely on merit.

34.     On information and belief, these representations were false because, unbeknownst to NXIVM, each professional recommended by O'Hara and hired by NXIVM paid a secret kickback to O'Hara based upon the amount of monies paid by NXIVM to that professional. Had NXIVM known that, NXIVM would not have hired these professionals without further investigation, and, in all events, would not have paid them the monies kicked back to O'Hara.

## E.     THE FIFTH FRAUDULENT SCHEME: OHARA'S EMBEZZLEMENT OF DONATIONS

35.     In or about the Spring and Summer of 2003, NXIVM asked O'Hara to assist it in creating a tax-exempt foundation that would pursue scientific research. At that time, O'Hara was affiliated with an existing tax-exempt organization, Humanalysis, Inc. ("Humanalysis"), and offered (and represented that he had authority to do so) to use Humanalysis for NXIVM's purposes, namely scientific research. Unfortunately, O'Hara's offer of Humanalysis was merely another fraudulent scheme to misappropriate funds of NXIVM and others.

36.     Pursuant to this fraudulent scheme, O'Hara misrepresented to NXIVM that in order to convert Humanalysis, Inc. to further NXIVM's goals, he needed to remove his ex-wife, Polit, from any position of authority at Humanalysis. At that time, upon information and belief, Polit was the Executive Director of Humanalysis. According to O'Hara, it would cost NXIVM $100,000 to be paid to Polit so that she would relinquish control of Humanalysis. O'Hara falsely represented to NXIVM that it would be cheaper, quicker and entirely legal to proceed in this manner. In fact, on

9

information and belief, paying a fee to someone to remove herself from an executive or board position with a charitable institution is illegal.

37.     NXIVM reasonable relied upon these misrepresentations, which O'Hara knew to be false, and provided O'Hara with $100,000 for payment to his ex-wife. O'Hara made these misrepresentations with the intent to deceive NXIVM and induce NXIVM into, *inter alia*, paying him and Polit $100,000. However, while O'Hara changed the name of Humanalysis to "The Ethical Foundation, Inc." ("TEF"), O'Hara never converted TEF to pursue NXIVM's charitable goals. Rather, he and Polit devised this scheme together pursuant to a conspiracy, and, upon information and belief, converted the $100,000 for their own purposes.

38.     Moreover, O'Hara and Polit used this fraudulent scheme as a tool to dupe individuals, namely the Donor Plaintiffs, into donating hundreds of thousands of dollars to Humanalysis and/or TEF ("Donations"). O'Hara knowingly misrepresented to the Donor Plaintiffs, through NXIVM, that their donations would go to Humanalysis and/or TEF to support NXIVM's purposes for the foundation. O'Hara made these misrepresentations with the intent to deceive the Donor Plaintiffs and induce the Donor Plaintiffs into making the Donations. The Donor Plaintiffs justifiably relied upon these misrepresentations.

39.     In reliance upon these misrepresentations, the Donor Plaintiffs contributed a total of $217,000 to TEF. Thereafter, sometime in 2004 or 2005, on dates peculiarly within the knowledge of O'Hara, O'Hara embezzled virtually all of this money by transferring it into his business account for his own purposes.

10

## ALLEGATIONS PLED ON INFORMATION AND BELIEF

40.     The sources of the information underlying the allegations previously and hereinafter pled "upon information and belief" are the communications O'Hara had with Plaintiffs, documents drafted by O'Hara, and the course of conduct of the parties.

### AS AND FOR A FIRST CAUSE OF ACTION
### (R.I.C.O. Against All Defendants)

41.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

42.     O'Hara conducts his business affairs -- both legitimate and illegitimate -- through a number of different business entities, including The O'Hara Group, PLLC, The O'Hara Group, LLC, The Ethical Foundation, Inc., Saratoga Development and Management, Inc., and Property Management and Development, Inc.  On information and belief, these entities, as well as possible other entities presently unknown to Plaintiffs, are ongoing organizations that function as a continuing unit controlled by O'Hara for the financial benefit of O'Hara and his cronies.  These entities serve together as interchangeable parts of the vehicle for the conduct of O'Hara's business and legal affairs.  Together, these business entities serve as an association-in-fact enterprise ("O'Hara Enterprise") within the meaning of 18 U.S.C. § 1961(4).

43.     The activities of the O'Hara Enterprise affect interstate and international commerce.

44.     Each of the Defendants herein have conducted the affairs of the O'Hara Enterprise as follows:

a.     O'Hara has directed the affairs of the O'Hara Enterprise;

11

  b.  Rutnik has lent money to at least one member of the O'Hara Enterprise, and then secured business referrals from O'Hara, including the referral of NXIVM, pursuant to the fraudulent scheme detailed above; and

  c.  Polit has assisted O'Hara by serving as the Executive Director of TEF, and then by purportedly removing herself from TEF's affairs in return for an illicit $100,000 payment.

  45.  Defendants have conducted the affairs of the O'Hara Enterprise in part through hundreds of violations of 18 U.S.C. §§ 1341 and 1343. More specifically, these violations consisted of at least the following:

  a.  Wire transfers of fees to O'Hara;

  b.  Payment of fees by check to Rutnik, which were then collected by Rutnik's bank through the federal banking system;

  c.  Wire transfers and credit card contributions by the Donor Plaintiffs;

  d.  Wire transfers from the Bronfmans to O'Hara;

  e.  Wire transfers of TEF funds to O'Hara;

  f.  Mailed letters and checks, telephone calls, faxes, and emails between NXIVM and both O'Hara and Rutnik;

  g.  Mailed letters, telephone calls, faxes, and emails between O'Hara and Rutnik; and

  h.  Mailed letters, telephone calls, faxes, and emails between O'Hara and Polit. Each of these mail or wire communications, which commenced in October of 2003 and continued until August of 2005, were foreseeable to the Defendants. Moreover, even if the contents of any

12

particular communication was not itself fraudulent, such communications nonetheless furthered the fraud.

46.     In addition, throughout 2005, O'Hara has committed multiple violations of 18 U.S.C. § 1951 by threatening to seek criminal prosecution of NXIVM -- based upon either appropriate conduct in which NXIVM had engaged based upon the advice of O'Hara and Rutnik -- unless NXIVM paid him monies to which he was not entitled and did not insist upon O'Hara returning the donations to TEF's bank account.

47.     The racketeering acts complained of constituted a pattern of racketeering activity. They were all related to each other in that they were directed at NXIVM and those associated with it. But for Plaintiffs' discovery of Defendants' illegal conduct, such conduct would have continued unabated for a substantial period of time. In particular, among other things, NXIVM had arranged for a $20 million contribution to TEF which O'Hara would undoubtedly have diverted had his misconduct been discovered prior to the transfer of those monies to TEF.

48.     As a proximate result of Defendants' conduct, each of the Plaintiffs herein have been damaged in an amount to be determined at trial and then trebled.

### AS AND FOR A SECOND CAUSE OF ACTION
### (R.I.C.O. Conspiracy Against All Defendants)

49.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 48 above as if fully and completely set forth herein.

50.     On information and belief, each of the Defendants knew about and agreed to facilitate the frauds upon Plaintiffs that are alleged above.

13

51.     As a proximate result of Defendants' conduct, each of the Plaintiffs herein have been damaged in an amount to be determined at trial and then trebled.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Fraud Against All Defendants)

52.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

53.     By reason of the foregoing, Defendants have defrauded Plaintiffs, who have each been damaged in an amount to be determined at trial.

54.     In addition, the conduct of Defendants was so gross, wanton, and malicious that Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against All Defendants By NXIVM)

55.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

56.     By reason of the foregoing, O'Hara breached the fiduciary duties that he owed to NXIVM, and Rutnik and Polit knowingly participated in that breach.

57.     By reason of the foregoing, Defendants have damaged NXIVM in an amount to be determined at trial.

58.     In addition, the conduct of Defendants was so gross, wanton, and malicious that NXIVM is entitled to punitive damages in an amount to be determined at trial.

14

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against O'Hara and Rutnik By NXIVM)

59.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

60.     By reason of the foregoing, Rutnik breached the fiduciary duties that he owed to NXIVM, and O'Hara knowingly participated in that breach.

61.     By reason of the foregoing, Defendants O'Hara and Rutnik have damaged NXIVM in an amount to be determined at trial.

62.     In addition, the conduct of Defendants was so gross, wanton, and malicious that NXIVM is entitled to punitive damages in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against All Defendants By the Bronfmans)

63.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

64.     By reason of the foregoing, O'Hara breached the fiduciary duties that he owed to the Bronfmans.

65.     By reason of the foregoing, O'Hara has damaged each of the Bronfmans in an amount to be determined at trial.

66.     In addition, the conduct of O'Hara was so gross, wanton, and malicious that each of the Bronfmans is entitled to punitive damages in an amount to be determined at trial.

15

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Malpractice Against O'Hara By NXIVM and the Bronfmans )

67.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

68.     By reason of the foregoing, O'Hara failed to exercise the degree of care, skill and diligence commonly possessed by a member of the legal profession.

69.     NXIVM and the Bronfmans have been thereby damaged in an amount to be determined at trial.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (Breach of Contract Against O'Hara By NXIVM and the Bronfmans)

70.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

71.     By reason of the foregoing, O'Hara breached his contractual obligations to NXIVM and the Bronfmans.

72.     NXIVM and the Bronfmans have been thereby damaged in an amount to be determined at trial.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Breach of Contract Against Rutnik By NXIVM)

73.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

74.     By reason of the foregoing, O'Hara breached his contractual obligations to NXIVM and the Bronfmans.

16

75.     NXIVM and the Bronfmans have been thereby damaged in an amount to be determined at trial.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Unjust Enrichment Against All Defendants)

76.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 40 above as if fully and completely set forth herein.

77.     By reason of the foregoing, Defendants were enriched at Plaintiffs' expense, and equity and good conscience compels that the Defendants should return those funds to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment granting the following relief:

A.      On Plaintiffs' First and Second Causes of Action against all Defendants, compensatory damages in an amount proven at trial and then trebled.

B.      On Plaintiffs' Third and Fourth Causes of Action against all Defendants, compensatory and punitive damages in an amount proven at trial.

C.      On Plaintiffs' Fifth Causes of Action against O'Hara and Rutnik, compensatory and punitive damages in an amount proven at trial.

D.      On Plaintiffs' Sixth Cause of Action against all Defendants, compensatory and punitive damages in an amount proven at trial.

E.      On Plaintiffs' Seventh and Eighth Causes of Action against O'Hara, compensatory damages in an amount proven at trial.

F.      On Plaintiffs' Ninth Cause of Action against Rutnik, compensatory damages in an amount proven at trial.

17

      G.      On Plaintiffs' Tenth Cause of Action against all Defendants, a return of the monies

by which Defendants have been unjustly enriched.

      H.      Attorney's Fees, costs and disbursements of this action; and

      I.      Such other and further relief as this Court deems just and proper.

Dated: New York New York
       August 17, 2005

                JUDD BURSTEIN, P.C.
                *Attorneys for Plaintiffs*

                By_____
                Judd Burstein (Bar No. 513217)
                1790 Broadway
                New York, New York 10019
                Tel. (212) 974-2400
                Fax (212) 974-2944

18

# EXHIBIT
# A

## "OPTION TO PURCHASE REAL ESTATE AGREEMENT"

**THIS "OPTION TO PURCHASE REAL ESTATE AGREEMENT"** (hereinafter referred to as this "Agreement") is being entered into as of July 1, 2004 by and between Joseph J. O'Hara, an individual who currently resides at 25 Riverwalk Way in Cohoes, NY 12047-3335 (hereinafter referred to as "JJO"), and Clare W. Bronfman, an individual who currently resides at 6677 Upper York Road in New Hope, PA 18938 (hereinafter referred to as "CWB"). In this regard, this "Agreement" is intended to be mutually binding upon JJO and CWB – and, as applicable, upon their respective past, present and/or future agents, assigns, attorneys, heirs, insurers, partners, predecessors-in-interest, representatives, successors-in-interest, etc.

### - WITNESSETH -

**WHEREAS**, JJO currently owns +/- 131.9 acres on River Road in New Baltimore, NY (hereinafter referred to as the "Property"), which is more fully described in the "Property Description" that is appended hereto as <u>Attachment I</u> and incorporated herein by reference; and

**WHEREAS**, JJO is willing to sell the Property for the sum of $1,000,000; and

**WHEREAS**, CWB wishes to secure an option to purchase the Property for the sum of $1,000,000 (hereinafter referred to as the "Option"); and

**WHEREAS**, JJO is willing to provide the above-referenced Option to CWB if, in return, CWB is willing to loan the sum of One Million Dollars ($1,000,000) to JJO (hereinafter referred to as the "Loan") per the terms and conditions that are set forth in the "Promissory Note" that is appended hereto as <u>Attachment II</u> and incorporated herein by reference; and

**WHEREAS**, CWB is willing to loan the sum of One Million Dollars ($1,000,000) to JJO per the terms and conditions that are set forth in the above-referenced "Promissory Note" in order to secure the above-referenced Option;

**NOW, THEREFORE**, in consideration of the premises and promises set forth herein – and for other good and valuable consideration, the adequacy of which and the exchange of which are hereby acknowledged by both parties – JJO and CWB do hereby agree as follows:

(1)    CWB will loan the sum of $1,000,000 to JJO (hereafter referred to as the "Loan") as follows:

- $500,000 on or about July 15, 2004; and
- $500,000 on or about July 31, 2004.

In conjunction with the above-referenced Loan, JJO will execute two (2) *originals* of the "Promissory Note" that is appended hereto as <u>Attachment II</u> and incorporated herein by reference. In this regard, JJO will provide one (1) *original* "Promissory Note" to CWB – and retain the other for his files.

(2)     In conjunction with the above-referenced Loan, JJO hereby grants CWB the right to purchase the Property for the sum of $1,000,000. In this regard, the other applicable terms and conditions with respect to that Option are as follows:

- JJO will have the right to continue marketing the Property – and, in the event that he receives a *bona fide* "Offer" concerning same, he will provide CWB with a copy of that "Offer" (<u>Note: For the purposes of this "Agreement", a *bona fide* "Offer" is defined as an offer to purchase the Property from an unrelated third party who has no other business dealings with JJO – and/or with any other entity in which JJO has an equity interest – and which is for a minimum "Purchase/Sale Price" of $1,000,000</u>);

- CWB will have the right to "match" the above-referenced "Offer" within five (5) days of her receipt of same (<u>Note</u>: In the event that she does not "match" the "Offer" – or if she does not respond to her copy of that "Offer" – within five (5) days JJO will have the right to accept the "Offer");

- If JJO accepts the above-referenced "Offer", he must utilize all of the funds that he receives from the sale of the Property to reduce the amount that he owes to CWB with respect to the Loan; and

- CWB will have the right to transfer the Option to another entity.

(3)     In conjunction with the above-referenced Loan, JJO will also provide the same type of consultative services that he has previously provided to NXIVM Corporation d/b/a Executive Success Programs (hereinafter referred to as "NXIVM/ESP") during the period from July 1, 2004 through December 31, 2006. In this regard, however, JJO will <u>not</u> charge NXIVM/ESP any fees for those consultative services during that same period (<u>Note</u>: JJO will continue to receive reimbursements from NXIVM/ESP for all of his related out-of-pocket expenditures).

(4)     For purposes of this "Agreement", any notice and/or other communication given or made hereunder must be in writing. Provided that it is correctly addressed to the party for whom it is intended at the respective address indicated below, any such written notice and/or other communication will be deemed to have been given upon: (i) hand delivery of same, (ii) deposit of same in the United State's registered or certified mail, first-class postage and fees prepaid, (iii) delivery via E-mail with a copy of same sent to a third party via the same E-mail, (iv) delivery via facsimile with receipt confirmed by telephone, or (v) deposit of same with an overnight courier service, fees prepaid, provided that such notice or other communication was sent to the following respective addresses:

- If to JJO:

<div align="center">

Joseph J. O'Hara
25 Riverwalk Way
Cohoes, NY  12047-3335
E-mail: jjohara@SGS-inc.net

</div>

<div align="center">

-Page 2 of 3-

</div>

• If to CWB:

Clare W. Bronfman
6677 Upper York Road
New Hope, PA 18938
E-mail: clarewebb21@aol.com

(5)   This "Agreement" may only be amended/modified by means of a written amendment that is approved by both of the parties hereto. In this regard, all such amendments will be attached hereto and made a part of this "Agreement".

(6)   This "Agreement" contains all of the conditions and provisions that have been agreed upon by the parties hereto — and no other agreements, oral or written, concerning the subject matter of this "Agreement" will be deemed to exist and/or to bind the parties hereto in any manner whatsoever. In addition, this "Agreement" supercedes any prior agreement, with respect to the subject matter hereof, oral or written, between JJO and CWB.

(7)   This "Agreement" will be interpreted and enforced in accordance with the laws of the State of New York. In this regard, any legal actions concerning the terms and/or conditions of this "Agreement" — and/or the application thereof — must be brought in an appropriate court in New York State that has jurisdiction over the parties hereto and the subject matter hereof — this "Agreement".

(8)   In the event that any term or condition of this "Agreement" (or any application thereof) is deemed to be illegal, invalid or otherwise unenforceable, then the legality, validity and/or enforceability of the remaining terms and conditions (or any other application thereof) will not in any way be affected or impaired thereby.

(9)   This "Agreement" may be executed in several counterparts, each of which shall constitute an original — and it is agreed that all such counterparts, taken together, will constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto hereby indicate their mutual understanding of — and their mutual agreement with — all of the terms and conditions set forth herein as follows:

For:   JJO                                        For:   CWB

_____                        _____
Joseph J. O'Hara                                 Clare W. Bronfman

Date: ___10/4/04___                              Date: _____

-Page 3 of 3-

<div align="right">__Attachment I__</div>

### *PROMISSORY NOTE*

__$1,000,000.00__

<div align="right">__Date: July 1, 2004__</div>

In conjunction with the funds that are to be transferred to him per the schedule that is appended hereto as __Addendum A__, the undersigned, Joseph J. O'Hara, an individual who currently resides at 25 Riverwalk Way in Cohoes, NY 12047, [hereinafter referred to as "the Payor"] hereby promises to pay to the order of Clare W. Bronfman, an individual who currently resides at 6677 Upper York Road in New Hope, PA 18938, [hereinafter referred to as "the "Payee"] the sum of One Million Dollars ($1,000,000), along with the applicable amount of interest due with respect to each of the applicable "Transfer Amounts and Transfer Dates" that are set forth in __Addendum A__ at the rate of five percent (5%) per annum. In this regard, the payment of the entire $1,000,000 – plus all of the applicable interest thereon – will be due and payable on December 31, 2006.

In addition to the payment terms set forth above, the following terms and conditions will be applicable with respect to this "Promissory Note":

- The Payor will have the right to prepay the whole or any part of the $1,000,000 at any time prior to December 31, 2006 without any pre-payment penalty. In this regard, any such prepayments will be applied first to the payment of accrued interest – and then to the payment of the remaining principal amount.

- If any payment obligation under this "Promissory Note" is not paid when it is due, the Payor will be responsible for paying all of the costs that are associated with the collection of that obligation – including, but not limited to, reasonable attorney fees, regardless of whether a lawsuit is commenced as part of the collection process.

- If any one or more of the provisions of this "Promissory Note" are, for any reason, determined to be unenforceable, in whole or in part, the remaining provisions will remain in full force and effect.

- All payments of principal and interest on this "Promissory Note" will be paid in the legal currency of the United States.

- The liability of the Payor with respect to this "Promissory Note" will not be affected by any renewal or extension of this "Promissory Note", by any delay in enforcing any right of the Payee under this "Promissory Note" and/or by any assignment of this "Promissory Note" by the Payee. In this regard, all of the rights of the Payee under this "Promissory Note" will be cumulative in nature – and, as such, then may be exercised concurrently or consecutively at the sole and exclusive option of the Payee.

- This "Promissory Note" will be construed in accordance with the laws of the State or New York. In this regard, any legal action that is brought in conjunction with this "Promissory Note: must be brought in New York State Supreme Court in Albany County, NY.

- The Payor hereby waives all of his rights, if any, with respect to presentment, demand, notice, protest and all other demands and notices in conjunction with the delivery, acceptance, performance and enforcement of this "Promissory Note".

- Each of the following events will be a separate "Event of Default" with respect to this "Promissory Note":

    (a) The Payor defaults on the payment of principal of this "Promissory Note" for more than thirty (30) days after such payment becomes due and payable;

    (b) The Payor sells all or substantially all of his assets; makes an assignment for the benefit of his creditors; fails generally to pay his debts as such debts become due; applies for or consents to the appointment of or taking possession by a trustee, receiver or liquidator (or other similar official) of the Payor or any substantial property of the Payor; commences a case under the Federal bankruptcy laws, as now or hereafter constituted, or any other applicable Federal or State bankruptcy, insolvency or other similar law; or the Payor takes any action looking to the dissolution or liquidation of all or substantially all of his assets; and/or

    (c) If, within 60 days after the commencement against the Payor of a case or an order of relief entered against him under the Federal bankruptcy laws, as now or hereafter constituted, or any other applicable Federal or State bankruptcy, insolvency or other similar law, such case will have been consented to or will not have been dismissed or all orders or proceedings thereunder affecting the operation of the business of the Payor stayed, or if the stay of any such order or sixty (60) days after the entry of a decree appointing a trustee, receiver or a liquidator (or other similar official) of the Payor or any substantial part of the property of the Payor, such appointment will not have been vacated.

If there is any "Event of Default" during the term of this "Promissory Note", the Payee may, by written notice to the Payor, declare the principal on this "Promissory Note" to be forthwith due and payable. In addition, the Payee may proceed to protect and enforce her rights by an action at law, suit in equity or via any other appropriate proceeding against the Payor.

Signed this 4ᵗʰ day of Octobe 2004
in Albany, NY

By: _____
Joseph J O'Hara
Payor

Witnessed on this 4ᵗʰ day of Octob 2004
in Albany, NY

By _____
Irma Ferrell
Witness

- Page 2 of 2 -

## Addendum A

### Payment Schedule RE:  Loan

In conjunction with the "Promissory Note" that Joseph J. O'Hara executed on her behalf as of July 1, 2004, Clare W. Bronfman will transfer the following amounts to him:

- $   500,000 on or about July 15, 2004; and
- $   500,000 on or about July 31, 2004
  $1,000,000    Total

## Real Property Subject To This "Agreement"

All that tract or parcel of land that is located in the County of Greene, Town of New Baltimore, State of New York – and that is more particularly identified by Tax Map Number 17-5-1.1 (hereinafter referred to as the "Real Property"). In this regard, the Real Property includes +/- 131.9 acres of undeveloped land that is located on River Road in the Town of New Baltimore, NY.

# EXHIBIT
# B

9579   (Property) (Deed)

**GREENE COUNTY CLERK'S OFFICE**
Mary Ann Kordich, County Clerk
P.O. Box 446-320 Main Street
Catskill, New York 12414
Phone: (518) 943-2050 – Fax: (518) 943-2146

LIBER# 1138  PG# 181
10/28/2004  12:51PM
INST # 9579
GREENE COUNTY CLERK
MARY ANN KORDICH

tax mapping

All type or print must be legible for scanning. If not, documents will be returned.

TYPE OF DOCUMENT: DEED

GRANTOR/MORTGAGOR/ASSIGNOR: ERIC TURNQUIST AND GERALDINE TURNQUIST

GRANTEE/MORTGAGEES/ASSIGNEES:
PROPERTIES MANAGEMENT AND DEVELOPMENT, INC

TRANSFER TAX STAMP:

MORTGAGE TAX STAMP:

909

TOWN: NEW BALTIMORE

AMOUNT: $950,000

3800
OCT 28 2004
REAL ESTATE TRANSFER TAX
GREENE COUNTY

LIST BELOW NAME AND ADDRESS OF R & R ONLY
(RECORD & RETURN)

JOHN M DEVINE, ESQ
PIETER SCHUYLER BUILDING
600 BROADWAY
ALBANY NY 12207

THIS PAGE IS PART OF THE INSTRUMENT, DO NOT REMOVE.

GCC/Rev. 10/1/03

*Trinity Abstract, Inc.*
*TRI-GRE - 17751*

**DEED.BNY/Public**
**Town: New Baltimore**
**Tax Map No.:17-5-1.1, 17-5-10 & 17-5-13**

LIBER: 1138  PG: 182
10/28/2004   12:51PM
INST # 9579
GREENE COUNTY CLERK
MARY ANN KORDICH

**THIS INDENTURE**, made as of the 16th day of September in the year 2004

**BETWEEN: Eric Turnquist and Geraldine Turnquist, husband and wife** residing at 27 Hill and Dale Road, Lebanon New Jersey, 08833 Party of the First Part, and

**Properties Management & Development, Inc.**, having a place of business at *19 DOVE ST, ALBANY, NY 12210* Party of the Second Part,

**WITNESSETH**, that the Party of the First Part, in consideration of One Dollar ($1.00), lawful money of the United States of America, and other good and valuable consideration, paid by the Party of the Second Part, does hereby grant and release unto the Party of the Second Part, the heirs or successors and assigns of the Party of the Second Part, forever,

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND situate, lying and being in the Town of New Baltimore, County of Greene and State of New York, more particularly described on Schedule A attached.

Subject to enforceable easements, covenants and restrictions of record.

Being and intended to be part of the premises conveyed to Eric Turnquist and Geraldine Turnquist, husband and wife, by deed from Clifford F. Armstrong, a/k/a Clifford Armstrong, Keith Armstrong and Kraig Armstrong, dated January 29, 2003 and recorded in the Office of the Greene County Clerk on January 29, 2003 in Liber 1063 of Deeds at Page 116.

**TOGETHER with all right, title and interest, if any, of the Party of the First Part in and to any streets and roads abutting the above described premises to the center lines thereof.**

**TOGETHER with the appurtenances and all the estate and rights of the Party of the First Part in and to said premises.**

**TO HAVE AND TO HOLD the premises herein granted unto the Party of the Second Part, the heirs or successors and assigns of the Party of the Second Part forever.**

**AND the Party of the First Part covenants that the Party of the First Part has not done or suffered anything whereby the said premises have been incumbered in any way whatever, except as aforesaid.**

**AND the Party of the First Part, in compliance with section 13 of the Lien Law, covenants that the Party of the First Part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.**

**The word "party" shall be construed as if it read "parties" whenever the sense of this Indenture so requires.**



**IN WITNESS WHEREOF,** the Party of the First Part has duly executed this deed the day and year first above written.

In Presence of:

_Eric Turnquist_
Eric Turnquist

_Geraldine Turnquist_
Geraldine Turnquist

State of New Jersey          )
County of _Somerset_         )ss.:

On the _16_ day of _September_ in the year 2004, before me, the undersigned, personally appeared: Eric Turnquist and Geraldine Turnquist          , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public - State of New Jersey
VINCENZO GRANDE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Apr. 11, 2007

Record and Return to:

John M. Devine, Esq.
Pieter Schuyler Building
600 Broadway
Albany, New York 12207



SCHEDULE A

PARCEL 1:

ALL THOSE CERTAIN PIECES OR PARCELS OF LAND situate, lying and being in the Town of New Baltimore, Greene County, New York, more particularly bounded and described in deed from Margaret M. Bronk, individually and as Executrix of the Last Will and Testament of Edmund F. Bronk, deceased to Joseph Armstrong, Jr., dated December 16th, 1922 and recorded in the Greene County Clerk's Office November 3rd, 1922 in Liber 232 of Deeds at Page 483, and also described in Warranty Deed from Caroline Bronk to Joseph Armstrong, Jr., dated October 23rd, 1922 and recorded in the Greene County Clerk's Office November 3rd, 1922 in Liber 232 of Deeds at Page 485.

EXCEPTING from said premises, however, so much thereof as was conveyed by Joseph Armstrong, Jr. to the County of Greene by deed dated January 23rd, 1967 and recorded in the Greene County Clerk's Office January 27th, 1967 in Liber 429 of Deeds at Page 850, consisting of 0.2804 acres, designated as Parcel L for relocation of River Road.

ALSO EXCEPTING from said premises so much thereof as was conveyed by Joseph Armstrong, Jr., to Edison Kour and Dorothy Kour, his wife, by deed dated September 6th, 1968, consisting of a parcel of 55 front feet along the north side of Kings Road by 200 feet in depth, consisting of a portion of the fourth parcel of the premises described in the two above mentioned deeds.

ALSO EXCEPTING from said premises so much thereof as was conveyed by Joseph Armstrong, Jr., to Joseph Rutana and Lois Rutana, his wife, by deed dated September 6th, 1968 and recorded in the Greene County Clerk's Office October 16, 1968 in Liber 438 of Deeds at Page 562, consisting of a portion of the fourth parcel of the premises described in the two above mentioned deeds.

ALSO EXCEPTING from said premises so much thereof as was conveyed by Joseph Armstrong, Jr. to Clifford Armstrong and Billie C. Armstrong, his wife, by deed dated February 7th, 1969 and recorded in the Greene County Clerk's Office February 14th, 1969 in Liber 440 of Deeds at Page 84, consisting of a portion of the fifth parcel of the premises described in the two above mentioned deeds.

ALSO EXCEPTING from said premises so much thereof as was conveyed by Joseph Armstrong, Jr. to Joseph Timpa, Sr. and Carmella Timpa, his wife, by deed dated February 27th, 1970 and recorded in the Greene County Clerk's Office April 1st, 1970 in Liber 446 of Deeds at Page 282, consisting of a portion of the fourth parcel of the premises described in the two above mentioned deeds.

ALSO ALL THOSE CERTAIN TRACTS, PIECES OR PARCELS OF LAND situate, lying and

LIBER: 1138 PAGE: 185

being in the Town of New Baltimore, County of Greene and State of New York more particularly bounded and described in the following three conveyances:

Warranty Deed from Henry C. Fuhrman to Joseph Armstrong, Jr., dated July 13th, 1942, recorded in Greene County Clerk's Office July 25th, 1942 in Liber 288 of Deeds at Page 335;

Warranty Deed from Henry C. Fuhrman to Joseph Armstrong, Jr., dated June 3rd, 1944, recorded in Greene County Clerk's Office July 6th, 1944 in Liber 293 of Deeds at Page 457;

Warranty Deed from Henry C. Fuhrman to Joseph Armstrong, dated January 20th, 1954, recorded in Greene County Clerk's Office January 26th, 1954 in Liber 335 of Deeds at Page 80.

EXCEPTING THEREFROM, ALL THAT TRACT, PIECE OR PARCEL OF LAND situate, lying and being in the Town of New Baltimore, County of Greene and State of New York, located on the easterly side of River Road and more particularly bounded and described as follows:

BEGINNING at a point in the easterly line of River Road, said point being in the division line between the lands now or formerly of Dean on the south as described and recorded in Liber 928 at Page 52 and the lands now of formerly of Armstrong on the north as described and recorded in Liber 527 at Page 144; thence in a general northerly direction along said line of River Road the following four (4) courses: 1) North 04°05'09" East, for a distance of 25.27 feet to a point; thence 2) North 11°56'48" East, for a distance of 51.69 feet to a point; thence 3) North 17°44'14" East for a distance of 52.10 feet to a point; thence 4) North 20°28'23" East, for a distance of 123.00 feet to a point; thence, running through the lands of Armstrong the following five (5) courses: 1) South 69°31'37" East, for a distance of 273.90 feet; 2) South 15°28'50" East, for a distance of 67.27 feet; 3) South 77°37'10" East, for a distance of 55.37 feet; 4) South 37°26'50" East, for a distance of 79.43 feet; 5) South 10°03'02" West, for a distance of 332.92 feet to a point; thence, North 78°16'02" West, for a distance of 59.08 feet to a point; thence North 12°33'04" East for a distance of 232.46 feet to a point in the aforementioned division line between Dean on the south and Armstrong on the north; thence North 77°39'00" West, and along said division line for a distance of 392.00 feet to the point or place of BEGINNING. Being the same premises conveyed to Keith Armstrong, Kraig Armstrong and Velma Armstrong from Clifford Armstrong, Kraig Armstrong and Keith Armstrong by deed dated January 29, 2003 and recorded in the Greene County Clerk's Office. The aforementioned parcel is also shown and designated as Parcel 1 of a certain map dated November 27, 2002 titled "Survey of lands owned by Clifford Armstrong, Keith Armstrong and Kraig Armstrong, prepared by O.J. Meyer & Son, P.L.S., Lic. No. 049511", which map is to be filed in the Greene County Clerk's Office on January 29, 2003 as Map No. 2003-17.

PARCEL II:

ALL THAT TRACT OR PARCEL OF LAND situated in the Town of New Baltimore, County of

Greene and State of New York, being a portion of the entire Lavallee farm which farm was transferred to Sophie Lavallee by Frank M. Blogett and wife, by deed dated January 15, 1917 and recorded in the Greene County Clerk's Office January 18, 1917, in Liber 213 of Deeds at Page 56, this portion herein intended to be conveyed being about forty (40) acres, more or less, and being that portion of the above mentioned Lavallee farm located northerly of the public highway leading from the New Baltimore West Shore Railroad Station to the River Road, such portion being further bounded and described as follows:

Northerly by lands now or formerly of James and William Houghtaling, westerly by lands now or formerly of Frank Matthews, Jacob Nelson and one Coburn, southerly by the said public highway leading from the New Baltimore Railroad Station to the River Road, and easterly by lands now or formerly of Balters Van Slyke.

EXCEPTING FROM the above described PARCEL I and PARCEL II, as much thereof as was appropriated by the People of the State of New York, notice of which was recorded in Liber 333 of Deeds at Page 134, Liber 391 of Deeds at Page 185, Liber 415 of Deeds at Page 163 and Liber 416 of Deeds at Page 101.

ALSO EXCEPTING FROM the above described PARCEL I and PARCEL II, as much thereof as was conveyed by deed from Clifford F. Armstrong and Lester Armstrong to Jorge Rodriguez and Karla Rodriguez, dated July 14, 1988 and recorded in the Office of the Greene County Clerk on July 18, 1988 in Liber 677 of Deeds at Page 301.

ALSO EXCEPTING THEREFROM, so much of the above described PARCEL I and PARCEL II as may have been conveyed by Boundary Line Agreement recorded in Liber 375 of Deeds at Page 366, Liber 456 of Deeds at Page 150 and Liber 1063 of Deeds at Page 107, TOGETHER WITH the right title and interest in and to any and all property which may have been conveyed to the sellers or their predessors in title by Boundary Line Agreements recorded in Liber 375 of Deeds at Page 366, Liber 456 of Deeds at Page 150 and Liber 1063 of Deeds at Page 107.

ALSO EXCEPTING FROM PARCEL I and PARCEL II, ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, situate, lying and being in the Town of New Baltimore, County of Greene and State of New York, shown and designated as PARCEL NO. 2 (76.4272 +/- ac.) on a certain map certain map dated November 27, 2002 titled "Survey of lands owned by Clifford Armstrong, Keith Armstrong and Kraig Armstrong, prepared by O.J. Meyer & Son, P.L.S., Lic. No. 049511", which map is to be filed in the Greene County Clerk's Office on January 29, 2003 as Map No. 2003-17.

# EXHIBIT
# C

SARATOGA COUNTY CLERK
COUNTY CLERK'S RECORDING PAGE

RECEIPT NO.:   074806

INDEXED BY: *lw*

SCANNED BY:

BOOK OF DEEDS

BOOK 01430   PAGE 00221

NO. PAGES    2

INSTRUMENT CODE: DED

INSTRUMENT NO.:   9603437

RECORDING:
  RECORDING DEED FEES          14.00
  EDUCATION FEE                 5.00
  DEEDS - EA-5217              25.00
  FILING FEE                    6.00

  TOTAL:                       50.00

STATE OF NEW YORK
SARATOGA COUNTY CLERK

RECORDED ON 02/21/96 AT 10:01 AM

IN BOOK DEEDS        PAGE 00221 OF 01430

TRANSFER TAX

Transfer Tax      1,400.00

Transfer Tax#      9603437

Rosemarie A. Corbett,
SARATOGA COUNTY CLERK

THIS PAGE IS PART OF THE INSTRUMENT

RETT
#1,405.00

Standard N.Y.(B.T.U. Form 8003          · Warranty Deed with Full Covenants--Individual or Corporation (single sheet)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT - THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY**

**THIS INDENTURE,** made the 9th      day of  February    , nineteen hundred and  ninety six

**BETWEEN**     FRANK JULIANO, residing at 2417 Pearsall Avenue, Bronx, New York

party of the first part, and JODONO ASSOCIATES, INC., a New York State Corporation, with
its principal place of business at 102 Circular Street, Saratoga Springs, New York

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars and other valuable consideration
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs
or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the  City of Saratoga Springs, Saratoga County, New York State,
bounded and described as follows:

BEGINNING at a 1 1/2" iron pipe found at the intersection of the easterly
line of N.Y.S. Route 9 and the northerly line of lands of The People of the
State of New York.

Thence along the easterly line of said N.Y.S. Route 9 the following two courses:

N25°04'51"E, 237.91 feet to a concrete monument found
N19°13'05"E, 224.82 feet to a point

Thence through the lands of the grantor S81°36'40"E, 1658.13 feet to a point.
Thence along the westerly line of lands of the People of the State of New York as
recorded in the Saratoga County Clerk's Office in Liber 747 of Deeds, page 383
S07°12'52"W, 445.26 feet to a nail found set in the base on an 8" maple tree.
Thence along the northerly line of said Lands of The People of the State of New
York N81°52'03"W, 594.25 feet to a survey marker and N81°39'12"W, 1183.58 feet
partially along a stone wall to the point of BEGINNING.  Containing 17.592 acres
of land.

All distances are level and all bearings are based on Magnetic North 1995.

BEING a part of lot 17.1, Section 178, Block 2 conveyed by deed dated May 19, 1978
between MILLIE JULIANO as grantor and FRANK JULIANO as grantee, recorded in Book
983, page 827 on January 25, 1979 in the Saratoga County Clerk's Office.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and
roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances
and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO
HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of
the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of
the first part will receive the consideration for this conveyance and will hold the right to receive such consid-
eration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply
the same first to the payment of the cost of the improvement before using any part of the total of the same for
any other purpose.

AND the party of the first part covenants as follows: that said party of the first part is seized of the said
premises in fee simple, and has good right to convey the same; that the party of the second part shall quietly
enjoy the said premises; that the said premises are free from incumbrances, except as aforesaid; that the
party of the first part will execute or procure any further necessary assurance of the title to said premises; and
that said party of the first part will forever warrant the title to said premises.
The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

*Frank Juliano*
PENALTIES: FRANK JULIANO

STATE OF NEW YORK, COUNTY OF New York ss:

On the 9th day of February 19 96, before me personally came

FRANK JULIANO

to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

Gloria Orelich

Notary Public
GLORIA ORELICH
Notary Public, State of New York
No. 03-1020800
Qualified in Bronx County
Commission Expires May 31, 19 97

STATE OF NEW YORK, COUNTY OF ss:

On the day of 19 , before me personally came

to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that executed the same.

STATE OF NEW YORK, COUNTY OF ss:

On the day of 19 , before me personally came to me known, who, being by me duly sworn, did depose and say that he resides at No. ; that he is the of , the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed h name thereto by like order.

STATE OF NEW YORK, COUNTY OF ss:

On the day of 19 , before me personally came the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he resides at No. ; that he knows to be the individual described in and who executed the foregoing instrument; that he, said subscribing witness, was present and saw execute the same; and that he, said witness, at the same time subscribed h name as witness thereto.

# Warranty Deed

WITH FULL COVENANTS

TITLE NO.

FRANK JULIANO

TO

JUDONO ASSOCIATES, INC.

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

*Distributed by*

CHICAGO TITLE INSURANCE COMPANY

SECTION 178

BLOCK 2

LOT 17.1

COUNTY OR TOWN

Recorded at Request of
CHICAGO TITLE INSURANCE COMPANY

Return by Mail to

Ferrara Jones, Esqs.
68 West Avenue
Saratoga Sprins, N.Y. 12866

Zip No.

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

01163

# EXHIBIT
# D

*Broadway &*
*Sara's land.*

## NOTE AND MORTGAGE

$200,000.00                                          Date August 7, 2000

Mortgagor    SARATOGA SITES, INC. f/k/a JODONO ASSOCIATES, INC. by name amendment filed 10/01/96 with the
             Secretary of State of the State of New York
Mortgagee    Douglas P. Rutnik
             c/o The Rutnik Law Firm
             112 State Street, Suite 1320
             Albany, New York 12207

Mortgagor promises to pay Mortgagee or order the sum of Two Hundred Thousand and no/100 dollars ($200,000.00) with interest at the rate of -0-% per year from the date above until the debt is paid in full. Mortgagor will pay the debt as follows:
         Entire principal balance due on or before December 31, 2003.

The Mortgagee will apply each payment to the repayment of the debt.

Payment shall be made at Mortgagee's address above or at any other address Mortgagee directs.

The underlying obligation is an antecedent debt owed to Mortgagee by The Institutes for Health & Human Services, Inc. and Joseph J. O'Hara.

### Additional promises and agreements of the Mortgagor:
1. The Mortgagor hereby mortgages to the Mortgagee the Property described in this Note and Mortgage. Mortgagor can lose the property for failure to keep the premises in this Note and mortgage.

2. The Property mortgaged (the "Property") is All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Saratoga Springs, Saratoga County, New York State, bounded and described as follows:

ALL THAT TRACT OR PARCEL OF LAND located in the City of Saratoga Springs, Saratoga County, New York State, bounded and described as follows:

BEGINNING at a 1 1/2" iron pipe found at the intersection of the easterly line of N.Y.S. Route 9 and the northerly line of lands of The People of the State of New York.  Thence along the easterly line of said N.Y.S. Route 9 the following two courses:

N25°04'51"E, 237.91 feet to a concrete monument found
N19°13'05"E, 224.82 feet to a point

Thence through the lands of the grantor S81°30'40"E, 1658.13 feet to a point.  Thence along the westerly line of lands of the People of the State of New York as recorded in the Saratoga County Clerk's Office in Liber 747 of Deeds at page 383 S07°12'52"W, 445.26 feet to a nail found set in the base of an 8" maple tree.  Thence along the northerly line of said lands of the People of the Sate of New York N81°52'03"W, 594.25 feet to a  survey marker and N81°39'12"W, 1183.58 feet partially along a stone wall to the point of beginning.  Containing 17.592 acres of land.

All distances are level and all bearings are based on Magnetic North 1995.

Being a portion of the premises conveyed to the grantor herein by Frank Juliano by deed dated February 9, 1996, and recorded in the Saratoga County Clerk's Office on February 21, 1996, in Book 1430 of Deeds at Page 221.

This mortgage is second and subordinate to a Collateral Security Mortgage given by JODONO Associates, Inc. to The Adirondack Trust Company in the amount of $100,000.00, dated July 22, 1996 and recorded in the Office of the Saratoga County Clerk on August 13, 1996 in Book of Mortgages 2009 at page 250, which such Collateral Security Mortgage was modified by a certain Consolidation and Modification Agreement between The Adirondack Trust Company AND Joseph J. O'Hara and Denise F. Polit-O'Hara, a/k/a Denise F. O'Hara, Borrower AND The Institutes for Health & Human Services, Inc., Capital Sports & Entertainment, Inc. and JODONO Associates, Inc., n/k/a Saratoga Sites, Inc., Guarantors dated January 22, 1997 and recorded in the Saratoga County Clerk's Office on April 10, 1997 in Book of Mortgages 2061 at page 425, which such Consolidation and Modification Agreement was further modified by (i) a Modification and Extension Agreement between The Adirondack Trust Company AND Joseph J. O'Hara and Denise F. Polit-O'Hara, a/k/a Denise F. O'Hara, Borrower AND The Institutes for Health & Human Services, Inc., Capital Sports & Entertainment, Inc. and JODONO Associates, Inc., n/k/a Saratoga Sites, Inc., Guarantors dated December 1, 1997 and recorded March 16, 1998 in Book 2151 of Mortgages at page 472, (ii) a Modification and Extension Agreement between the aforesaid parties dated July 1, 1998 and recorded October 28, 1998 in Book 2237 of Mortgages at page 445, (iii) a Modification and Extension Agreement between the aforesaid parties dated October 1, 1998 and recorded January 5, 1999 in Book 2267 of Mortgages at page 330, (iv) a Modification and Extension Agreement between the aforesaid parties dated January 10, 1999 and recorded February 3, 1999 in Book 2279 of Mortgages at page 383, (v) a Modification and Extension Agreement between the aforesaid parties dated July 10, 1999 and recorded October 5, 1999 in Book 2371 of Mortgages at page 787, (vi) a Modification and Extension Agreement between the aforesaid parties dated August 30, 1999 and recorded October 5, 1999 in Book 2371 of Mortgages at page 793, (vii) a Modification and Extension Agreement between the aforesaid parties dated October 30, 1999 and recorded December 30, 1999 in Book 2395 of Mortgages at page 769, and (viii) a Modification and Extension Agreement between the aforesaid parties dated December 30, 1999 and recorded January 28, 2000 in Book 2502 of Mortgages at page 745.

The Mortgagor shall have the right to prepay this Note and Mortgage in whole or in part, at any time without penalty.

D:\MyFiles\OHARA\BROADWAY\SOUTH\Rutnik mortgage 8.2.00.wpd

If any action or proceeding be commenced by the Mortgagee to foreclose this mortgage or to collect the mortgage debt, or id\f the mortgagee is a party to any lawsuit concerning this mortgage, all litigation expenses of the mortgagee, including reasonable attorney's fees, shall be paid by the mortgagor.

3. The Mortgagee may make advances in the future to the Mortgagor or future owners of the Property. In addition to the above Debt this Note and Mortgage is intended to secure any more debts now or in the future owed by the mortgagor to the mortgagee. The principal amount of the above Debt shall be the maximum amount of debt secured by this Note and Mortgage. Mortgagee is not obliged to make future advances.

4. The Mortgagor will keep the Property in reasonably good repair.

5. The Mortgagor may not, without the consent of Mortgagee, sell the Property or any part of it.

6. The Mortgagor authorizes Mortgagee to make payments necessary to correct a default of Mortgagor under Paragraphs 3 and 6 of this Mortgage and any payments made by Mortgagee from the date paid until the date of repayment shall be added to the Debt and secured by this Mortgage.

7. Within five (5) days after request in person or within ten (10) days after request by mail, the Mortgagor shall give to Mortgagee a signed statement of the amount due on this Note and Mortgage and whether there are any offsets or defenses against the Debt.

8. The Mortgagor warrants the title to the Property. In this agreement, the Mortgagor will be responsible for any costs or losses of the Mortgagee as an interest in the Property is claimed by others, EXCEPT the Mortgage to The Adirondack Trust Company referenced above, as modified, extended and consolidated, AND one certain Mechanic's Lien dated August 12, 1998 and filed August 13, 1998 and extended on August 10, 1999 by The Saratoga Associates Landscape Architects, Architects Engineers and Planners, P.C. vs. JODONO Associates, Inc. and Frank A. Juliano, Saratoga Sites, Inc. in the amount of $56,497.83 AND all City, County and School taxes and water rents which may be liens against the premises.

9. Mortgagee may declare the full amount of the Debt to be due and payable immediately for any default. The following are defaults:
   (A) The Mortgagor fails to make any payment required by this Note and Mortgage within 15 days of its due date;
   (B) The Mortgagor fails to keep any other promise or agreement in this Note and Mortgage within the time set forth, or if no time is set forth, within a reasonable time after notice is given that Mortgagor i in Default.

10. If the Mortgagor defaults under this Note and Mortgage and the Property is to be sold at a foreclosure sale, the property may be sold in one parcel.

11. If the Mortgagee sues to foreclose this Note and Mortgage, the Mortgagee shall have the right to have a receiver appointed to take control of the Property.

12. The Mortgagee shall have all the rights set forth in Section 254 of the New York Real Property Law in addition to Mortgagee's rights set forth in this Note and Mortgage, even if the rights are different from each other.

13. This Note and Mortgage may not be changed or ended orally.

14. All notices, demands or requests concerning this note and Mortgage must be in writing and must be delivered in person or sent by mail.

Mortgagor has signed this Note and Mortgage as of the date at the top of the first page.

WITNESS

MORTGAGOR   SARATOGA SITES, INC.

By: _____
Joseph J. O'Hara, President

State of New York:
        :ss.:
County of Saratoga:

On this 7th day of August, 2000, before me, a Notary Public in and for the said State, personally appeared Joseph J. O'Hara personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

THE JONES FIRM
P.O. Box 4400
68 West Ave.
Saratoga Springs, NY 12866

JANET McKEEN BALDES
Notary Public, State of New York
No. 4847303, Saratoga County
Commission Expires 11-30-20 01

D:\MyFiles\OHARA\BROADWAY SOUTH\Rutnik mortgage 8.2.00.wpd

**Saratoga County**
**COUNTY CLERK'S RECORDING PAGE**

RECEIPT NO.:283391

INDEXED BY

SCANNED BY:

RECORDING:
| | |
|---|---|
| Cover Sheet Fee  (Rcdg MTG) | 3.00 |
| Education Fee | 5.00 |
| Mortgage Tax Fee | 2,000.00 |
| Recording Fee  (MTG) | 5.00 |
| Markoffs | |
| Names | .50 |
| Pages | 6.00 |

TOTAL:                         2,019.50

*****NOTICE: THIS IS NOT A BILL *****

STATE OF NEW YORK
SARATOGA COUNTY CLERK

RECORDED ON 08/08/2000 AT 09:58:00

IN BOOK OF MORTGAGES   PAGE 00534 OF 02457

Kathleen A. Marchione
SARATOGA COUNTY CLERK

BOOK OF MORTGAGES

BOOK  02457          PAGE  00534

NO. PAGES     2

INSTRUMENT CODE: MTG

INSTRUMENT NO.:  200103231

MORTGAGE TAX

SERIAL #: CR200103231

| | |
|---|---|
| BASIC | 1,000.00 |
| CDTA | 500.00 |
| SONYMA | 500.00 |
| TOTAL: | 2,000.00 |

SARATOGA COUNTY CLERK

**THIS PAGE IS PART OF THE INSTRUMENT**

# EXHIBIT
# E

## "OPTION TO PURCHASE REAL ESTATE AGREEMENT"

THIS "OPTION TO PURCHASE REAL ESTATE AGREEMENT" (hereinafter referred to as this "Agreement") is being entered into as of September 1, 2004 by and between Joseph J. O'Hara, an individual who currently resides at 25 Riverwalk Way in Cohoes, NY 12047-3335 (hereinafter referred to as "JJO"), and Sara R. Bronfman, an individual who currently resides at 2280 Las Casitas Drive in Wellington, FL 33414 (hereinafter referred to as "SRB"). In this regard, this "Agreement" is intended to be mutually binding upon JJO and SRB – and, as applicable, upon their respective past, present and/or future agents, assigns, attorneys, heirs, insurers, partners, predecessors-in-interest, representatives, successors-in-interest, etc.

### – WITNESSETH –

WHEREAS, JJO currently owns +/- 17 acres on Route 9/South Broadway in Saratoga Springs, NY (hereinafter referred to as the "Property"), which is more fully described in the "Property Description" that is appended hereto as Attachment I and incorporated herein by reference; and

WHEREAS, JJO is willing to sell the Property for the sum of $750,000; and

WHEREAS, SRB wishes to secure an option to purchase the Property for the sum of $750,000 (hereinafter referred to as the "Option"); and

WHEREAS, JJO is willing to provide the above-referenced Option to SRB if, in return, SRB is willing to loan the sum of One Million Dollars ($1,000,000) to JJO (hereinafter referred to as the "Loan") per the terms and conditions that are set forth in the "Promissory Note" that is appended hereto as Attachment II and incorporated herein by reference; and

WHEREAS, SRB is willing to loan the sum of One Million Dollars ($1,000,000) to JJO per the terms and conditions that are set forth in the above-referenced "Promissory Note" in order to secure the above-referenced Option;

NOW, THEREFORE, in consideration of the premises and promises set forth herein – and for other good and valuable consideration, the adequacy of which and the exchange of which are hereby acknowledged by both parties – JJO and SRB do hereby agree as follows:

(1)    SRB will loan the sum of $1,000,000 to JJO (hereinafter referred to as the "Loan") as follows:

- $750,000 on or about October 1, 2004; and
- $250,000 on or about October 31, 2004.

In conjunction with the above-referenced Loan, JJO will execute two (2) *originals* of the "Promissory Note" that is appended hereto as Attachment II and incorporated herein by reference. In this regard, JJO will provide one (1) *original* "Promissory Note" to SRB – and retain the other for his files.

(2)  In conjunction with the above-referenced Loan, JJO hereby grants SRB the right to purchase the Property for the sum of $750,000.  In this regard, the other applicable terms and conditions with respect to that Option are as follows:

- JJO will have the right to continue marketing the Property – and, in the event that he receives a *bona fide* "Offer" concerning same, he will provide SRB with a copy of that "Offer" (Note: For the purposes of this "Agreement", a *bona fide* "Offer" is defined as an offer to purchase the Property from an unrelated third party who has no other business dealings with JJO – and/or with any other entity in which JJO has an equity interest – and which is for a minimum "Purchase/Sale Price" of $750,000);

- SRB will have the right to "match" the above-referenced "Offer" within five (5) days of her receipt of same (Note:  In the event that she does not "match" the "Offer" – or if she does not respond to her copy of that "Offer" – within five (5) days, JJO will have the right to accept the "Offer");

- If JJO accepts the above-referenced "Offer", he must utilize all of the funds that he receives from the sale of the Property to reduce the amount that he owes to SRB with respect to the Loan; and

- SRB will have the right to transfer the Option to another entity.

(3)  In conjunction with the above-referenced Loan, JJO will also provide the same type of consultative services that he has previously provided to NXIVM Corporation d/b/a Executive Success Programs (hereinafter referred to as "NXIVM/ESP") during the period from July 1, 2004 through December 31, 2006. In this regard, however, JJO will not charge NXIVM/ESP any fees for those consultative services during that same period (Note: JJO will continue to receive reimbursements from NXIVM/ESP for all of his related out-of-pocket expenditures).

(4)  For purposes of this "Agreement", any notice and/or other communication given or made hereunder must be in writing. Provided that it is correctly addressed to the party for whom it is intended at the respective address indicated below, any such written notice and/or other communication will be deemed to have been given upon: (i) hand delivery of same, (ii) deposit of same in the United State's registered or certified mail, first-class postage and fees prepaid, (iii) delivery via E-mail with a copy of same sent to a third party via the same E-mail, (iv) delivery via facsimile with receipt confirmed by telephone, or (v) deposit of same with an overnight courier service, fees prepaid, provided that such notice or other communication was sent to the following respective addresses:

- If to JJO:

Joseph J. O'Hara
25 Riverwalk Way
Cohoes, NY  12047-3335
E-mail: jjohara@SGS-inc.net

-Page 2 of 3-

- If to SRB:

Sara R. Bronfman
2280 Las Casitas Drive
Wellington, FL 33414
E-mail: sarab@NXIVM.com

(5) This "Agreement" may only be amended/modified by means of a written amendment that is approved by both of the parties hereto. In this regard, all such amendments will be attached hereto and made a part of this "Agreement".

(6) This "Agreement" contains all of the conditions and provisions that have been agreed upon by the parties hereto -- and no other agreements, oral or written, concerning the subject matter of this "Agreement" will be deemed to exist and/or to bind the parties hereto in any manner whatsoever. In addition, this "Agreement" supercedes any prior agreement, with respect to the subject matter hereof, oral or written, between JJO and SRB.

(7) This "Agreement" will be interpreted and enforced in accordance with the laws of the State of New York. In this regard, any legal actions concerning the terms and/or conditions of this "Agreement" -- and/or the application thereof -- must be brought in an appropriate court in New York State that has jurisdiction over the parties hereto and the subject matter hereof -- this "Agreement".

(8) In the event that any term or condition of this "Agreement" (or any application thereof) is deemed to be illegal, invalid or otherwise unenforceable, then the legality, validity and/or enforceability of the remaining terms and conditions (or any other application thereof) will not in any way be affected or impaired thereby.

(9) This "Agreement" may be executed in several counterparts, each of which shall constitute an original -- and it is agreed that all such counterparts, taken together, will constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto hereby indicate their mutual understanding of -- and their mutual agreement with -- all of the terms and conditions set forth herein as follows:

For: JJO

Joseph J. O'Hara
Date: 10/4/04

For: SRB

Sara R. Bronfman
Date:

*PROMISSORY NOTE*                                          <u>Attachment I</u>

<u>$1,000,000.00</u>

<u>Date: October 1, 2004</u>

In conjunction with the funds that are to be transferred to him per the schedule that is appended hereto as <u>Addendum A</u>, the undersigned, Joseph J. O'Hara, an individual who currently resides at 25 Riverwalk Way in Cohoes, NY 12047, [hereinafter referred to as "the Payor"] hereby promises to pay to the order of Sara R. Bronfman, an individual who currently resides at 2280 Las Casitas Drive in Wellington, FL 33414  [hereinafter referred to as "the "Payee"] the sum of One Million Dollars ($1,000,000), along with the applicable amount of interest due with respect to each of the applicable "Transfer Amounts and Transfer Dates" that are set forth in <u>Addendum A</u> at the rate of five percent (5%) per annum.  In this regard, the payment of the entire $1,000,000 – plus all of the applicable interest thereon – will be due and payable on December 31, 2006.

In addition to the payment terms set forth above, the following terms and conditions will be applicable with respect to this "Promissory Note":

- The Payor will have the right to prepay the whole or any part of the $1,000,000 at any time prior to December 31, 2006 without any pre-payment penalty.  In this regard, any such prepayments will be applied first to the payment of accrued interest – and then to the  payment of the remaining principal amount.

- If any payment obligation under this "Promissory Note" is not paid when it is due, the Payor will be responsible for paying all of the costs that are associated with the collection of that obligation – including, but not limited to, reasonable attorney fees, regardless of whether a lawsuit is commenced as part of the collection process.

- If any one or more of the provisions of this "Promissory Note" are, for any reason, determined to be unenforceable, in whole or in part, the remaining provisions will remain in full force and effect.

- All payments of principal and interest on this "Promissory Note" will be paid in the legal currency of the United States.

- The liability of the Payor with respect to this "Promissory Note" will not be affected by any renewal or extension of this "Promissory Note", by any delay in enforcing any right of the Payee under this "Promissory Note" and/or by any assignment of this "Promissory Note" by the Payee.  In this regard, all of the rights of the Payee under this "Promissory Note" will be cumulative in nature – and, as such, then may be exercised concurrently or consecutively at the sole and exclusive option of the Payee.

- This "Promissory Note" will be construed in accordance with the laws of the State or New York.  In this regard, any legal action that is brought in conjunction with this "Promissory Note: must be brought in New York State Supreme Court in Albany County, NY.

- Page 1 of 2 -

- The Payor hereby waives all of his rights, if any, with respect to presentment, demand, notice, protest and all other demands and notices in conjunction with the delivery, acceptance, performance and enforcement of this "Promissory Note".

- Each of the following events will be a separate "Event of Default" with respect to this "Promissory Note":

  (a) The Payor defaults on the payment of principal of this "Promissory Note" for more than thirty (30) days after such payment becomes due and payable;

  (b) The Payor sells all or substantially all of his assets; makes an assignment for the benefit of his creditors; fails generally to pay his debts as such debts become due; applies for or consents to the appointment of or taking possession by a trustee, receiver or liquidator (or other similar official) of the Payor or any substantial property of the Payor; commences a case under the Federal bankruptcy laws, as now or hereafter constituted, or any other applicable Federal or State bankruptcy, insolvency or other similar law; or the Payor takes any action looking to the dissolution or liquidation of all or substantially all of his assets; and/or

  (c) If, within 60 days after the commencement against the Payor of a case or an order of relief entered against him under the Federal bankruptcy laws, as now or hereafter constituted, or any other applicable Federal or State bankruptcy, insolvency or other similar law, such case will have been consented to or will not have been dismissed or all orders or proceedings thereunder affecting the operation of the business of the Payor stayed, or if the stay of any such order or sixty (60) days after the entry of a decree appointing a trustee, receiver or a liquidator (or other similar official) of the Payor or any substantial part of the property of the Payor, such appointment will not have been vacated.

If there is any "Event of Default" during the term of this "Promissory Note", the Payee may, by written notice to the Payor, declare the principal on this "Promissory Note" to be forthwith due and payable. In addition, the Payee may proceed to protect and enforce her rights by an action at law, suit in equity or via any other appropriate proceeding against the Payor.

Signed this 4th day of October, 2004
in Albany, NY

By: _____
Joseph J. O'Hara
Payor

Witnessed on this 4th day of October 2004
in Albany, NY

By: _____
Irma Terrell
Witness

- Page 2 of 2 -

<u>Addendum A</u>

<u>Payment Schedule RE:  Loan</u>

In conjunction with the "Promissory Note" that Joseph J. O'Hara executed on her behalf
as of October 1, 2004, Sara R. Bronfman will transfer the following amounts to him:

- $  750,000 on or about October 1, 2004; and
- $  250,000 on or about October 30. 2004
  $1,000,000   Total

## Real Property Subject To This "Agreement"

All that tract or parcel of land that is located in the County of Saratoga, City of Saratoga Springs, State of New York — and that is more particularly identified by Tax Map Number 178-2-17.12 (hereinafter referred to as the "Real Property"). In this regard, the Real Property includes +/- 17 acres of undeveloped land that is located on Route 9/South Broadway in Saratoga Springs, NY — and that is adjacent on two (2) sides of the +/- 312 acres of undeveloped land that is owned by the State of New York.